**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TZUMI INNOVATIONS, LLC, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| TWIN CITY FIRE INSURANCE COMPANY, a | ) |
| Connecticut Corporation, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**Civil Action No.:**

**COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT**
**REGARDING THE DUTY TO DEFEND**

**JURY TRIAL DEMANDED**

In this insurance coverage suit, Plaintiff Tzumi Innovations, LLC ("Tzumi") seeks a declaratory judgment that Defendant Twin City Fire Insurance Company ("Twin City") has a duty to defend Plaintiff in the action styled as *Kari Proskin v. Tzumi Innovations LLC,* Case No. 1:22-cv-05919-JSR in the United States District Court of the Southern District of New York (the "Proskin Action") and must reimburse Tzumi for all reasonable past defense expenses incurred in the Proskin Action, plus prejudgment interest at the statutory rate under New York law at 9% per annum from the date each defense invoice is due.

## THE PARTIES

1.      Plaintiff Tzumi Innovations, LLC is a New York limited liability company consisting of four individual members: Ezra Erani, Gabriel Khezrie, Rena Haber, and Hillel Haber, all of whom are citizens of the State of New York.

2.      On information and belief, Defendant Twin City is, and at all times herein mentioned was, an insurance company organized and existing under the laws of the state of Connecticut and with its principal place of business at One Hartford Plaza, Hartford, Connecticut 06155.

## JURISDICTION

3.      This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that complete diversity exists between the parties as the Plaintiff Tzumi is a citizen of New York and Defendant Twin City is a citizen of Connecticut for purposes of diversity jurisdiction.

5.      The amount in controversy exceeds the sum or value of $75,000 exclusive of interests and costs based on the defense costs Tzumi has incurred in the Proskin Action, and in addition to other and further relief, declaratory relief is sought.

## VENUE AND CHOICE OF LAW

6.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 because Tzumi's principal place of business is in this

federal judicial district.

7. On information and belief, Twin City sells insurance and defends lawsuits in New York, including in this District.

8. The insurance Policy at issue in this case was sold and delivered by Twin City to Tzumi in This federal judicial district.

9. New York law governs Twin City's obligations to Tzumi.

## THE TWIN CITY POLICY

10. Twin City issued to Tzumi a primary commercial general liability policy (Policy Number 16 SBA AA0300 SB (the "Policy") for the period June 14, 2020 through June 14, 2021, which was renewed for the period June 14, 2021 through June 14, 2022. A copy of the Twin City Policy is attached to this Complaint as **Exhibit "1"**.

11. The Policy's Personal and Advertising Injury Liability Insuring Agreement provides, in pertinent part, as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. . . .

12. The Policy defines "personal and advertising injury" in relevant part as follows:

> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> . . .
>
> d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.
>
> f. Copying, in your "advertisement" or on "your website", a person's or organization's "advertising idea" or style of "advertisement."

13. The Policy defines "advertisement" as follows:

> "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

a. (1) Radio; (2) Television; (3) Billboard; (4) Magazine; (5) Newspaper;
b. The Internet;
c. Any other publication that is given widespread public distribution.

However, "advertisement does not include:
a. The design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products; or
b. An interactive conversation between or among persons through a computer network.

14.     "Advertising idea" is defined in the Policy as "any idea for an 'advertisement.'"

15.     The Policy includes the following relevant Exclusions:

"Personal and advertising injury":
(1) Arising out of oral, written, electronic or any other manner of publication of material, if done by or at the direction of the insured with knowledge of its falsity;
(5) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement" or on "your website site"

**THE PROSKIN ACTION**

16.     On July 12, 2022, Kari Proskin filed a Complaint against Tzumi on behalf of herself and an unknown number of similarly situated individuals in the Proskin Action. Proskin and Plaintiffs Iris Boling and John Gordon later filed a First Amended Complaint ("FAC") on October 12, 2022 (collectively, "Claimants"). The original Complaint is attached as **Exhibit "2"** and the FAC is attached as **Exhibit "3"**.  (The two complaints are collectively referred to as "Complaint.")

17.     The Proskin Action is a nationwide class action brought by and on behalf of consumers allegedly harmed by Tzumi's Wipe Out! Wipes, Wipe Out! Multi-Surface Wipes, and Wipe Out! Multi-Surface Decontaminant Spray (collectively the "Products") that Tzumi allegedly "predatorily marketed to low income consumers in the height of an unprecedented pandemic and deceptively advertised as safe and effective antibacterial products." [Complaint, ¶ 1.]

18.     The Complaint and FAC assert the following allegations:

2. During the COVID-19 public health crisis, Defendant engaged in unfair and/or deceptive business practices by intentionally deceiving consumers into thinking that its Products were approved pesticide products that had been found by the EPA to be safe and effective on surfaces without submitting them to the EPA for registration. Without submitting the Products for registration, a mandatory process that allows the EPA to assess the safety and effectiveness of the Products, Defendant sold pesticide products without regulatory approval. Even worse, Defendant expressly stated that it intended the Wipe Out! Wipes to be sold to "lower income level customers." [See also, FAC at ¶¶ 2,3.]

4. In short, Defendant sold illegal pesticides to Plaintiffs and Class Members that were not approved as safe and effective for use as an antimicrobial agent on surfaces in homes. [See also, FAC at ¶4.]

5. Defendant makes numerous false and misleading claims and omissions on the labels of the Products that make the purchaser believe they were safe and effective for use as an antimicrobial agent on surfaces in homes. These false and misleading claims include, but are not limited to, "Wipe Out Antibacterial Wipes," "KILLS GERMS FAST*," "Cleans and sanitizes", and "KILL[] 99.9% OF GERMS,*" "*Escherichia Coli (E. coli), Staphylococcus Aureus (Staph)" and "Candida Albicans." And "Use it Anytime, Anywhere," pictures on surfaces such as kitchen appliances and bathroom fixtures, and instructions to "spray directly on the surface." Those claims were made without receiving EPA approval and render the Products illegal. [See also, FAC ¶5 ("These statements had the capacity or tendency to deceive or confuse customers into believing that the products were approved as safe for use on surfaces. However, the products were no[t] approved for such use. Therefore, the products were illegal to sell." and ¶19.]

12. Beginning in at least August 2020, Tzumi sold and distributed millions of units of "Wipe Out! Wipes" to retailers for further sales to customers. Tzumi has stated that it intended these products to be sold to "lower income level customers." [FAC, ¶16.]

13. The labels on these products, distributed during a deadly pandemic, implied to consumers that Wipe Out! Wipes could be used to disinfect surfaces of bacteria and viruses affecting public health. [FAC, ¶17.]

14. This was not inadvertent, but instead reflects Tzumi's intent to market the product as a surface disinfectant rather than a personal care product. When Tzumi publicly solicited designs for the Wipe Out! Wipes label, it described its intent to sell the product "in [the] cleaning section next to other disinfecting wipes" in retail stores. After selecting a winning design, Tzumi modified it to remove a prominent image of a hand and a reference to the product as a "hand sanitizer" positioning the product instead to look like disinfectant wipes intended for use on surfaces. Further, Tzumi selected packaging for Wipe Out! Wipes that resembled the packaging used by registered surface disinfectant wipes such as Lysol: upright plastic canisters with similar text placement and a similar color scheme, rather than the horizontal wrapped bags that have been used for personal care wipes for decades. [FAC, ¶ 21.]

15. Indeed, in early June 2020, Tzumi drafted and sent for posting on the website of Home Depot, its largest retailer, a "product description" of Wipe Out! Wipes for Home Depot's website that expressly claimed that the product was a disinfectant for surfaces. The language stated, in part, that Wipe Out! Wipes "clean and disinfect with antibacterial power that kills *99.9% of viruses and bacteria that can live on surfaces* up to 48 hours" and that "[t]hese all purpose wipes *remove common allergens, germs and messes on surfaces like kitchen counters, bathroom surfaces and more*." Home Depot posted this description provided by Tzumi on its website until approximately September 2020. In September 202, Home Depot removed from its website some of the references to disinfecting household surfaces pursuant to a request made by Tzumi on August 19, 2020 that Home Depot remove references to cleaning household surfaces and add the word "Hand Wipes." (Emphasis in original.) [FAC, ¶ 22.]

16. Consistent with Tzumi's misleading label, packaging and marketing materials, retailers have regularly placed Wipe Out! Wipes with household surface cleaning and disinfection products, adjacent to and/or in close proximity to EPA-registered disinfectants in the cleaning supplies/products aisle, rather than with personal care or hand sanitizing products in the health and beauty aisle. For example, EPA and state agency inspectors have found Wipe Out! Wipes sold in cleaning supplies/products aisles in brick-and-mortar Home Depot, Safeway, Walgreens and "At Home" stores. Similarly, EPA found Wipe Out! Wipes sold in the household cleaning supplies/disinfection section of retailers' websites including homedepot.com, hannford.com and walmart.com. [FAC, ¶ 23.]

> 19. Tzumi's Wipe Out! Wipes have lost their pandemic-fueled popularity and are now found for sale at significantly lower price points, creating a risk that individuals with limited budgets will substitute this product for registered surface disinfectants thus raising environmental justice concerns. [FAC, ¶ 24.]

19.     The Proskin Action makes similar allegations regarding two other products sold by Tzumi, including "WipeOut Multi-Surface Wipes" which Claimants allege Tzumi began selling in October 2020 with labeling suggesting it was intended for use to disinfect surfaces including graphics of household appliances, bathroom fixtures and surfaces. [Complaint, ¶¶ 20-23; FAC, ¶¶ 27-31.]

20.     The second product, "Wipe Out! Multi-Surface Decontaminant Spray" is alleged to also use a product label containing representations and omissions contrary to EPA-registration requirements, yet was sold on shelves adjacent to EPA-registered disinfectant products. [Complaint, ¶¶ 24-30; FAC, ¶¶ 32-39.]

21.     The Claimants allege that they purchased the Wipe Out! Products relying on the packaging misleadingly suggesting that it was approved as safe and effective for use as an antimicrobial agent on surfaces in homes and that Claimants used the products accordingly, that they would not have so done had they known the products were not approved for surfaces and suffered damages as a result of Tzumi's misleading labeling. [Complaint, ¶¶ 31-35; FAC, ¶¶ 44-51.]

22.     The Complaint alleges the following claims for relief: (1) Violation of State Consumer Protection Statutes on behalf of the Consumer Protection Multi-State Class; (2) Breach of Express Warranty on behalf of the National Class and, alternatively, the Massachusetts Subclass; (3) Fraudulent Concealment on behalf of the National Class and, alternatively, the Massachusetts Subclass; (4) Unjust Enrichment on behalf of the National Class and, alternatively, the Massachusetts Subclass; and (5) Violations of Mass. Gen. Laws Chapter 93A, § 2 on behalf of the Massachusetts Subclass.

23.     The FAC explicitly alleges the following claims for relief: (1) Violation of New York General Business Laws §§ 349 & 350 on behalf of Plaintiffs Boling, Proskin and the New York Subclass; (2) Violation of California's Unfair Competition Law ("UCL") California

Business and Professions Code §17200, *et. seq*., California's Consumer Legal Remedies Act (CLRA) California Civil Code §1750, *et seq*. and California's False Advertising Law (FAL) California Business & Professions Code §17500, *et seq*., on behalf of Plaintiff Gordon and the California Subclass; and (3) Breach of Express Warranty, Fraudulent Concealment and Unjust Enrichment on behalf of the National Class and alternatively the New York and California Subclasses; and (4) Violation of Mass. Gen. Laws Chapter 93A, § 2 on behalf of plaintiff Proskin and the Massachusetts Subclass.

**TWIN CITY'S DENIAL**

24.    On July 28, 2022 Tzumi promptly tendered the Proskin Action to Twin City seeking a defense.

25.    Twin City denied a defense of the original Complaint in the Proskin Action in a September 12, 2022 letter, a copy of which is attached as **Exhibit "4"**. Twin City contended that the Complaint did not allege facts establishing potentially covered "personal and advertising injury."

26.    On October 18, 2022, Tzumi tendered the defense of the FAC to Twin City.

27.    Twin City denied a defense of the First Amended Complaint in the Proskin Action in a November 10, 2022 letter, a copy of which is attached as **Exhibit "5"**. Twin City maintained its position that the FAC did not allege facts establishing potentially covered "personal and advertising injury."

**ALLEGATIONS OF DISPARAGEMENT ESTABLISH A POTENTIAL FOR COVERAGE UNDER POLICY OFFENSE (d)**

**A Three-Element Test Applies to This Offense**

28.    The Policy defines the "Personal and advertising injury" offense of "disparagement" as having three elements relevant here:  (1) "injury … arising out of"; (2) "oral, written or electronic publication of material"; (3) "that disparages a person's or organization's goods, products or services."

29.    Each of the three elements described in the preceding paragraph is potentially met

by the Proskin Action allegations, thereby triggering Twin City's duty to defend Tzumi.

**Element One – "Injury Arising Out Of" Offense (d) Is Alleged**

30.     The Twin City Policy defines "personal and advertising injury" as any "injury . . . arising out of" a listed offense.

31.     "Arising out of" is not defined in the Twin City Policy. But it includes policy language that is of much broader significance than "caused by." New York law recognizes the term "arising out of" as meaning "originating from," "incident to," or "having connection with" and it should be construed broadly to require only "*some* causal relationship between the injury and the risk for which coverage is provided," not proximate causation.

32.     The Complaints allege that Tzumi "predatorily marketed to low income consumers in the height of an unprecedented pandemic and deceptively advertised as safe and effective antibacterial products." [Complaint, ¶ 1.]

33.     The Complaints further allege that Tzumi packaged its products to appear similar to approved disinfectants such as Lysol and sold its products in the cleaning supplies sections of stores and websites alongside of approved disinfectants for surfaces such as Lysol. [Complaint 16; FAC 23.]

34.     The Complaints allege that "injury…ar[ose] from" Tzumi's alleged marketing, advertisements, labeling and packaging representing that its products were approved for surface use similar to well-known products such as Lysol when in fact they were not:

> 17. The **labels on these products**, distributed during a deadly pandemic, **implied to consumers that Wipe Out! Wipes could be used to disinfect surfaces of bacteria and viruses affecting public health.**
>
> 18. The back of the **label states** in large lettering **that consumers can "Use it Anytime, Anywhere."**
>
> 21. The **deceptive labeling** was not inadvertent, but instead **reflects Tzumi's intent to market the product as a surface disinfectant** rather than a personal care product. \*\*\* **Tzumi modified it to remove a prominent image of a hand and a reference to the product as a "hand sanitizer" positioning the product instead to look like disinfectant wipes intended for use on surfaces**. Further, Tzumi **selected packaging for Wipe Out! Wipes that resembled the packaging used by registered surface disinfectant wipes such as Lysol:** upright plastic canisters with

similar text placement and a similar color scheme…

23. Consistent with Tzumi's misleading label, packaging and marketing materials, **retailers have regularly placed Wipe Out! Wipes with household surface cleaning and disinfection products, adjacent to and/or in close proximity to EPA-registered disinfectants in the cleaning supplies/products aisle,** rather than with personal care or hand sanitizing products in the health and beauty aisle. *** Similarly, EPA found Wipe Out! Wipes sold in the household cleaning supplies/disinfection section of retailers' websites including homedepot.com, hannford.com and Walmart.com.

47. Each of the Plaintiffs reviewed and relied on the product packaging **before purchasing Wipe Out! Wipes, including the term "Use It Anytime, Anywhere."**

48. **Based on the product packaging**, each of the **Plaintiffs believed that the products were approved as safe and effective for use as antimicrobial agents on surfaces in homes**…. Each of the Plaintiffs used the products at issue here on surfaces.

49. **However, Wipe Out! Wipes were not approved as safe and effective for use as an antimicrobial agent on surfaces in homes,** and were illegal to sell.

51. **Plaintiffs would not have purchased Wipe Out! Wipes** or would not have purchased them on the same terms, **if they had known that the products had not been approved for disinfecting surfaces and were illegal to sell. Each Plaintiff has therefore suffered economic harm as a result of Defendant's misleading labeling.**

(Emphasis added).

35.     The Complaint allegations implicate a defense under offense (d) by asserting Tzumi's misleading advertising, marketing, packaging and labeling suggest that Plaintiff's Wipe Out! Wipes was an approved surface disinfectant when it was allegedly not. This alleged misdescription made its better-priced product the more competitive choice, thereby implicitly denigrating products offered by competitors like Lysol as overpriced.

36.     The "injury arising out of" element is met in the Complaint allegations that the "injury" the class members sustained "originated from," "was incident to" or "had a connection

with" Tzumi's publication, which implicitly disparaged competing products in light of the negative comparative inferences that purportedly arose from its marketing of its competing product next to those of its competitors as a variety of retail outlets.

37.    The injury alleged in the Proskin Action potentially "arises out of" offense (d).

**Element Two – "Oral, Written Or Electronic Publication Of Material" Is Alleged**

38.    The Proskin Action alleges that Tzumi made false or misleading statements of fact in its marketing labels and packaging, which were advertisements of its products.

39.    The Complaint allegations create the reasonable inference that Tzumi published disparaging statements about its competitors to retailers and consumers. The alleged "injury" was one "arising out of" "publication of material" by Tzumi, according to the allegations of the Complaint and FAC in its marketing, advertisements, packaging, labeling and in merchandise displays through major retailers created the asserted liability:

> 21. **The deceptive labeling was not inadvertent, but instead reflects Tzumi's intent to market the product as a surface disinfectant rather than a personal care product.** When Tzumi publicly solicited designs for the Wipe Out! Wipes label, it described its intent to sell the product "in [the] cleaning section next to other disinfecting wipes" in retail stores. After selecting a winning design, **Tzumi modified it to remove a prominent image of a hand and a reference to the product as a "hand sanitizer" positioning the product instead to look like disinfectant wipes intended for use on surfaces. Further, Tzumi selected packaging for Wipe Out! Wipes that resembled the packaging used by registered surface disinfectant wipes such as Lysol: upright plastic canisters with similar text placement and a similar color scheme, rather than the horizontal wrapped bags that have been used for personal care wipes for decades.**
>
> 22. In early June 2020, **Tzumi drafted and sent for posting on the website of Home Depot, its largest retailer, a "product description" of Wipe Out! Wipes for Home Depot's website that expressly claimed that the product was a disinfectant for surfaces.** The language stated, in part, that Wipe Out! Wipes "clean and disinfect with antibacterial power that kills 99.9% of viruses and bacteria that can live on surfaces up to 48 hours" and that "[t]hese all purpose wipes remove common allergens, germs

and messes on surfaces like kitchen counters, bathroom surfaces and more." **Home Depot posted this description provided by Tzumi on its website until approximately September 2020**.

23. Consistent with Tzumi's misleading label, packaging and marketing materials, **retailers have regularly placed Wipe Out! Wipes with household surface cleaning and disinfection products, adjacent to and/or in close proximity to EPA-registered disinfectants in the cleaning supplies/products aisle, rather than with personal care or hand sanitizing products in the health and beauty aisle.** For example, EPA and state agency inspectors have found Wipe Out! Wipes sold in cleaning supplies/products aisles in brick-and-mortar Home Depot, Safeway, Walgreens and "At Home" stores. Similarly, **EPA found Wipe Out! Wipes sold in the household cleaning supplies/disinfection section of retailers' websites including homedepot.com, hannford.com and Walmart.com.**

(Emphasis added).

40.    Unlike offense (f) for "copying, in your 'advertisement' a person's or organization's 'advertising idea'" the Policy's disparagement offense does not require an "advertisement."

41.    The undefined Policy term "publication" requires only one recipient.

42.    The Complaints nevertheless allege the widespread publication of disparaging materials in retail locations, in advertising and marketing materials, advertising, packaging and labeling and on retailer websites passing off Tzumi's products off as equivalent to approved surface disinfectants like Lysol.

**Element Three – "Disparages A[n] . . . Organization's . . . Products . . ." Is Alleged**

43.    "Disparagement" coverage under offense (d) is not limited to the factual assertion of any singular common law tort. Rather, it provides coverage for "damages because of . . . injury . . . arising out of . . . oral, written or electronic publication of material that . . . disparages a person's or organization's goods, products or services."

44.    Both the Proskin Complaint and FAC expressly allege in part that Tzumi's conduct caused injury under Mass. Gen. Laws Ch. 93A, § 2 and that this extends to prohibit:

Defendant engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Mass. Gen. Laws Ch. 93A, § 2:

> d) Disparaging the goods, services, or business of another by false or misleading representation of fact; ….

[Complaint, ¶ 78.]

45.     Tzumi's alleged statements that its products were on par with its competitors' approved surface use products when they were allegedly not is equivalently disparaging. A statement equating a competitor's product with an allegedly inferior one is logically indistinguishable from, and no less disparaging than, a statement describing one's own product as 'superior' to the competitors'.

46.     The undefined Policy term "disparage" should be understood to include a broad form of "product disparagement" including an express or implied statement about a competitor's goods which is untrue or misleading and which is made to influence or tends to influence the public not to buy the competitor's product, whether or not the competitor is explicitly identified.

47.     The Complaint allegations expressly and implicitly imply that Tzumi's marketing, packaging, labeling, advertising and selling its products as approved for surface use similar to well-known products like Lysol when they were not. Tzumi's marketing allegedly misled consumers and harmed the Tzumi's competitors whose products purportedly comply with applicable regulations. Tzumi's statements allegedly made invidious comparison to its competitors, suggesting that Tzumi's product were priced more competitively than its other truly approved, surface disinfectants. For example, Complaint, ¶19, FAC ¶24 states:

> Tzumi's Wipe Out! Wipes have lost their pandemic-fueled popularity and are now found for sale at significantly lower price points, creating a risk that individuals with limited budgets will substitute this product for registered surface disinfectants thus raising environmental justice concerns.

48.     The allegations in the Proskin Action evidence disparagement in that Tzumi's misleading statements, including its packaging, labeling, and promotion, represent that its products were on the same footing as other well-known and approved surface disinfectants, causing consumers to purchase Tzumi products over those of its competitors:

21. The deceptive labeling was not inadvertent, but instead reflects Tzumi's intent to market the product as a surface disinfectant rather than a personal care product. **When Tzumi publicly solicited designs for the Wipe Out! Wipes label, it described its intent to sell the product "in [the] cleaning section next to other disinfecting wipes" in retail stores.** After selecting a winning design, **Tzumi modified it to remove a prominent image of a hand and a reference to the product as a "hand sanitizer" positioning the product instead to look like disinfectant wipes intended for use on surfaces. Further, Tzumi selected packaging for Wipe Out! Wipes that resembled the packaging used by registered surface disinfectant wipes such as Lysol: upright plastic canisters with similar text placement and a similar color scheme, rather than the horizontal wrapped bags that have been used for personal care wipes for decades.**

22. **In early June 2020, Tzumi drafted and sent for posting on the website of Home Depot, its largest retailer, a "product description" of Wipe Out! Wipes for Home Depot's website that expressly claimed that the product was a disinfectant for surfaces.** The language stated, in part, that Wipe Out! Wipes "clean and disinfect with antibacterial power that kills 99.9% of viruses and bacteria that can live on surfaces up to 48 hours" and that "[t]hese all purpose wipes remove common allergens, germs and messes on surfaces like kitchen counters, bathroom surfaces and more." Home Depot posted this description provided by Tzumi on its website until approximately September 2020.

23. **Consistent with Tzumi's misleading label, packaging and marketing materials, retailers have regularly placed Wipe Out! Wipes with household surface cleaning and disinfection products, adjacent to and/or in close proximity to EPA-registered disinfectants in the cleaning supplies/products aisle, rather than with personal care or hand sanitizing products in the health and beauty aisle**. For example, EPA and state agency inspectors have found Wipe Out! Wipes sold in cleaning supplies/products aisles in brick-and-mortar Home Depot, Safeway, Walgreens and "At Home" stores. **Similarly, EPA found Wipe Out! Wipes sold in the household cleaning supplies/disinfection section of retailers' websites including homedepot.com, hannford.com and Walmart.com.**

(Emphasis added).

49.    The Proskin Action allegations factually establish the basis for potential coverage

under Twin City's "disparagement" Policy offense.

50.     Because unfair competition claims potentially include disparagement, which are alleged in the Proskin Action, the Complaint and FAC also contain causes of action that can satisfy the requirements of offense (d).

51.     To the extent there is any *factual* dispute about what occurred that would evidence disparagement, that possibility alone triggers a duty to defend.

### ALLEGATIONS OF COPYING A PERSON'S OR ORGANIZATON'S ADVERTISING IDEA ESTABLISH A POTENTIAL FOR COVERAGE UNDER POLICY OFFENSE (f)

#### A Three-Element Test Applies To This Offense

58.     The test for "Personal and advertising injury" offense (f) of the Twin City Policy contains four elements: (1) "injury . . . arising out of"; (2) "copying…a person's or organization's 'advertising idea' or style of 'advertisement'"; (3) in your "advertisement."

59.     Each element of the offense is met by the Complaint allegations.

#### Element One – "Injury Arising Out Of" Offense (f) Is Alleged

60.     The Policy defines "personal and advertising injury" as any "injury . . . arising out of" a listed offense.

61.     "Arising out of" is not defined in the Twin City Policy. But it includes policy language that is of much broader significance than "caused by." New York law recognizes the term "arising out of" as meaning "originating from," "incident to," or "having connection with" and it should be construed broadly to require only "*some* causal relationship between the injury and the risk for which coverage is provided," not proximate causation.

62.     The Claimants allege that Tzumi "predatorily marketed to low income consumers in the height of an unprecedented pandemic and deceptively advertised as safe and effective antibacterial products." [Complaint, ¶ 1.]

63.     "Injury…ar[ose] from" Tzumi's alleged marketing and advertising of its products as approved for surface use similar to well-known products such as Lysol when in fact they were not:

> 22. **In early June 2020, Tzumi drafted and sent for posting on the website of Home Depot, its largest retailer, a "product**

**description" of Wipe Out! Wipes for Home Depot's website that expressly claimed that the product was a disinfectant for surfaces.** The language stated, in part, that Wipe Out! Wipes "clean and disinfect with antibacterial power that kills 99.9% of viruses and bacteria that can live on surfaces up to 48 hours" and that "[t]hese all purpose wipes remove common allergens, germs and messes on surfaces like kitchen counters, bathroom surfaces and more." ***

(Emphasis added).

### Element Two – Copying A Person's Or Organization's "Advertising Idea" Is Alleged

59.    The Policy broadly defines "Advertising idea" as "any idea for an 'advertisement.'"

60.    All the Policy requires for element two of offense (f) is that the advertising idea be "a person's or organization's" without specifying that the advertising idea belong to anyone in particular.  The Policy language does not require a narrow construction that would require the idea to be owned by the party suing the insured.

61.    The "copy of a person's" phrase is satisfied whenever an advertising idea is copied and was not originated by the insured—even if that is not that of the Claimant. Otherwise, the policy language would be "copying [the claimant's] 'advertising idea'" as opposed to "a person's or organization's 'advertising idea.'"

62.    "Of a person's or organization's" can mean "connected to or associated with a person or organization other than the insured" with no limiting definitional requirements that the idea be "connected" or "associated" with a claimant.  This construction for "of a person's or organization's" is reasonable, and if any reasonable construction of policy language supports coverage, it must be applied even if another reasonable construction is possible.

63.    The Proskin Action Complaint alleges that Tzumi advertised by posting website descriptions as part of its marketing promoting its products as well-known, approved surface disinfectants misleading consumers into believing that Tzumi's products were on equal footing when in fact they were not.

22. **In early June 2020, Tzumi drafted and sent for posting on the website of Home Depot, its largest retailer, a "product description" of Wipe Out! Wipes for Home Depot's website that expressly claimed that the product was a disinfectant for surfaces.** The language stated, in part, that Wipe Out! Wipes "clean and disinfect with antibacterial power that kills 99.9% of viruses and bacteria that can live on surfaces up to 48 hours" and that "[t]hese all purpose wipes remove common allergens, germs and messes on surfaces like kitchen counters, bathroom surfaces and more."

23 **EPA found Wipe Out! Wipes sold in the household cleaning supplies/disinfection section of retailers' websites including homedepot.com, hannford.com and Walmart.com.**

(Emphasis added).

### Element Three – "In Your Advertisement" Is Alleged

64.    The Policy defines "advertisement" as follows:

**"Advertisement" means the widespread public dissemination of information or images** that has the **purpose of inducing the sale of** goods, **products** or services through:

    a.   (1) Radio; (2) Television; (3) Billboard; (4) Magazine; (5) Newspaper;
    b.   **The Internet**;
    c.   **Any other publication that is given widespread public distribution**.

However, "advertisement" does not include:

    a.   The design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products; or
    b.   An interactive conversation between or among persons through a computer network.

(Emphasis added).

65.    Coverage for "advertising injury" is triggered under the Policy where the complaint alleges that the insured used information it misappropriated…to market and advertise.

66.    The Complaint allegations include that Tzumi engaged in the Internet marketing and advertising for purposes of inducing sales:

- Indeed, in early June 2020, **Tzumi drafted and sent for posting on the website of Home Depot, its largest retailer, a "product description" of Wipe Out! Wipes for Home Depot's website that expressly claimed that the product was a disinfectant for surfaces**. The language stated, in part, that Wipe Out! Wipes

"clean and disinfect with antibacterial power that kills 99.9% of viruses and bacteria that can live on surfaces up to 48 hours" and that "[t]hese all purpose wipes remove common allergens, germs and messes on surfaces like kitchen counters, bathroom surfaces and more."

(Emphasis added).

67.    In support of the Proskin claimants' request for class certification, claimants allege that one of the common questions of law and fact is "[w]hether **the marketing, advertising**, packaging, labeling, **and other promotional materials** for the Products are deceptive and conform with the requirements of the FDCA." (Emphasis added.)

68.    The Complaint specifically alleges liability arising from Tzumi's "false advertising" under several states' false advertising statutes, as well as that Tzumi "engaged in **misleading and deceptive advertising**." (Emphasis added.)

69.    The Complaint alleges facts based on "marketing" and "advertising." For example, "The terms of the contract include the promises and affirmations of fact made by Defendant . . . **through marketing and advertising**, as described above." (Complaint, ¶ 54, Emphasis added.)

## COUNT 1

### Declaratory Relief – Duty to Defend

70.    Tzumi incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

71.    A valid contract exists between Tzumi and Twin City, namely the Policy.

72.    Tzumi fully performed all of the obligations and conditions to be performed by it under the Policy including paying the very substantial Policy premium.

73.    By selling the Policy, Twin City agreed to provide a defense for suits seeking damages for "personal and advertising injury" offenses as defined in the Policy.

74.    The underlying Proskin Action Complaint and FAC allege facts implicating the potential for "personal and advertising injury" coverage under the Policy, thereby triggering Twin City's obligation to defend Tzumi.

75.    Twin City was required by the Policy to provide for Tzumi's defense throughout

the Proskin Action.

76.     Twin City has denied that the Proskin Action alleges facts potentially implicating coverage under the Policy or stated claims even potentially covered under the Policy, and it has asserted that exclusions would eliminate any defense duty that otherwise existed. Therefore, Twin City has refused to defend the Proskin Action.

77.     An actual bona fide controversy exists between Tzumi and Twin City that requires judicial declaration by this Court of the parties' rights and duties under the Policy with respect to: (1) whether Twin City had and has a duty to defend Tzumi in the Proskin Action; and (2) whether Twin City is required to reimburse Tzumi for the defense expenses Tzumi has incurred to date.

## COUNT 2

### Breach of Contract

78.     Tzumi incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

79.     A valid contract exists between Tzumi and Twin City, namely the Policy.

80.     Tzumi fully performed all of the obligations and conditions to be performed by it under the Policy including paying the Policy premium.

81.     By selling the Policy, Twin City agreed to provide a defense for suits seeking damages for "personal and advertising injury" offenses as defined in the Policy.

82.     The Proskin Action alleges facts potentially implicating "personal and advertising injury" coverage under the Policy, thereby triggering Twin City's obligation to defend and indemnify Tzumi.

83.     No exclusions excuse Twin City's failure to defend Tzumi in the Proskin Action.

84.     Twin City has refused to defend its insured in the Proskin Action or reimburse Tzumi for defense expenses it incurred in the Proskin Action.

85.     Twin City is obligated under the Policy to reimburse all defense expenses Tzumi incurred in the Proskin Action, including damages, attorneys' fees, and costs, as well as interest.

86.    Twin City breached its duty to defend and indemnify Tzumi in the Proskin Action

87.    As a result of that breach, Tzumi has been damaged in the amount of defense fees incurred to date plus interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tzumi prays for judgment against Defendant Twin City as follows:

1.    A judicial declaration that Twin City had and has a duty to defend Tzumi in the Proskin Action under the Policy;

2.    A judicial declaration that Twin City must reimburse Tzumi for the defense expenses Tzumi has incurred.

3.    An award of damages for Tzumi's reasonable attorneys' fees and costs incurred in its defense.

4.    An award of pre-judgment interest at the statutory rate on all defense invoices from the date of each invoice.

5.    Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Tzumi demands a trial by jury of all issues so triable.


DATED:  November 23, 2022                Respectfully submitted,

**GAUNTLETT & ASSOCIATES**              **THE KILLIAN FIRM, P.C.**
David A. Gauntlett, *pro hac vice pending*
James A. Lowe, *pro hac vice pending*     By:  /s/ Eugene Killian, Jr.
18400 Von Karman, Suite 300              Eugene Killian, Jr., Esq.  [EK-9972]
Irvine, California 92612                 48 Wall Street, 11th Floor
Telephone:  (949) 553-1010               New York, NY  10005
Facsimile:  (949) 553-2050               Telephone:  (212) 618-1409
dag@gauntlettlaw.com                     Facsimile:   (212) 618-1705
jal@gauntlettlaw.com                     ekillian@tkfpc.com


                            Attorneys for Tzumi Innovations, LLC