USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TZUMI INNOVATIONS LLC,

                Plaintiff,

        v.

TWIN CITY FIRE INSURANCE COMPANY,

                Defendant.

No. 22-CV-10004 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Tzumi Innovations LLC ("Tzumi") brings this insurance action against Defendant Twin City Fire Insurance Company ("Twin City") with respect to Twin City's alleged duty to defend and indemnify Tzumi in an underlying consumer protection action. At issue is whether the underlying action can be reasonably construed to allege a claim of commercial disparagement, which would bring it within the scope of the insurance policy's coverage. Pending before the Court is Tzumi's motion for partial summary judgment and Twin City's motion to dismiss for failure to state a claim. For the reasons that follow, Twin City's motion to dismiss is granted, and Tzumi's motion for partial summary judgment is denied.

## BACKGROUND

    The relevant facts in this action are undisputed. Tzumi is the named insured under a commercial general liability policy issued by Twin City (the "Policy"), effective from June 14, 2020 to June 14, 2021. The Policy provides, with respect to business liability coverage:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages, even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit"

> seeking damages for "bodily injury," "property damage" or "personal and advertising injury" to which this insurance does not apply . . . .

First Am. Compl., Ex. 1 (Business Liability Coverage Form § A(1)(a)). The Policy defines the term "personal and advertising injury," in relevant part, as injury arising out of "[o]ral, written, or electronic publication of material that . . . disparages a person's or organization's goods, products or services." *Id.* (Business Liability Coverage Form § G(17)(d)). The Policy also includes the following exclusions:

> "Personal and advertising injury":
> (1) Arising out of oral, written, electronic or any other manner of publication of material, if done by or at the direction of the insured with knowledge of its falsity [the "Knowledge of Falsity Exclusion"];
> . . . .
> (5) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement" or on "your web site" [the "Non-Conformance Exclusion"].

*Id.* (Business Liability Coverage Form § B(1)(p)(1), (p)(5), and Cyberflex Coverage Endorsement § A(1)(5)).

On July 12, 2022, Kari Proskin filed a nationwide consumer class action against Tzumi in the U.S. District Court for the Southern District of New York (the "*Proskin* Action"). *See* First Am. Compl., Ex. 3. Proskin later filed an amended complaint, along with additional named plaintiffs Iris Boling and John Gordon, on October 12, 2022 (the "*Proskin* Complaint"). *Id.*, Ex. 2. The *Proskin* Complaint alleges, in relevant part, that during the COVID-19 pandemic, Tzumi "ma[de] false and misleading claims on the labels of" three of its products—Wipe Out! Wipes, Wipe Out! Multi-Surface Wipes, and Wipe Out! Multi-Surface Decontaminant Spray (the "Products")—"that ma[de] the purchaser believe they were approved as safe and effective for use as an antimicrobial agent on surfaces in homes," when in fact Tzumi had not received such approval from the Environmental Protection Agency (the "EPA"). *Id.* ¶¶ 2, 5. These allegedly

2

deceptive labels included statements such as "Use it Anytime, Anywhere" and "KILLS 99.9% OF GERMS"; "pictures of surfaces such as kitchen appliances and bathroom fixtures"; and "instructions to 'spray directly on the surface.'" *Id.* ¶¶ 5, 19.

The *Proskin* Complaint further alleges that this "deceptive labeling was not inadvertent, but instead reflects Tzumi's intent to market the product as a surface disinfectant rather than a personal care product." *Id.* ¶ 21. In particular, according to the *Proskin* Complaint:

> When Tzumi publicly solicited designs for the Wipe Out! Wipes label, it described its intent to sell the product "in the cleaning section next to other disinfecting wipes" in retail stores. After selecting a winning design, Tzumi modified it to remove a prominent image of a hand and a reference to the product as a "hand sanitizer," positioning the product instead to look like disinfectant wipes intended for use on surfaces. Further, Tzumi selected packaging for Wipe Out! Wipes that resembled the packaging used by registered surface disinfectant wipes such as Lysol: upright plastic canisters with similar text placement and a similar color scheme, rather than the horizontal wrapped bags that have been used for personal care wipes for decades.

*Id.* As a result, retailers have allegedly "placed Wipe Out! Wipes with household surface cleaning and disinfection products, adjacent to and/or in close proximity to EPA-registered disinfectants in the cleaning supplies/products aisle, rather than with personal care or hand sanitizing products in the health and beauty aisle." *Id.* ¶ 23. The *Proskin* Complaint makes similar allegations about Tzumi's other two Products, Wipe Out! Multi-Surface Wipes and the Wipe Out! Multi-Surface Decontaminant Spray. *See id.* ¶¶ 27-34, 37. Tzumi allegedly reached a settlement with the EPA in 2022 over the deceptive labeling of the Products, which required Tzumi "to pay a civil penalty of $1.5 million[] and issue a corrective public service announcement that states that the [Products] are to be used for skin applications only and not as a disinfectant or sanitizer for surfaces." *Id.* ¶ 41.

The *Proskin* Complaint brings eight causes of action, which include violations of New York General Business Law §§ 349 and 350; California's Unfair Competition Law, Consumer

3

Legal Remedies Act, and False Advertising Law; Massachusetts General Law Chapter 93A, § 2; and common-law causes of action for breach of express warranty, fraudulent concealment, and unjust enrichment. The parties reached a settlement in principle in November 2022, and the district court preliminarily approved the class action settlement agreement on April 19, 2023.

Meanwhile, on July 28, 2022, Tzumi tendered the original complaint in the *Proskin* Action to Twin City, seeking a defense under the Policy. Tzumi 56.1 Statement ¶ 19. Tzumi also tendered the *Proskin* Complaint to Twin City on October 18, 2022. *Id.* ¶ 21. Twin City disclaimed coverage under both complaints. *Id.* ¶¶ 20, 22. Tzumi then filed this action on November 23, 2022, seeking a declaratory judgment that it was entitled to a defense from Twin City in the *Proskin* Action. Tzumi filed a First Amended Complaint on March 21, 2023, which, according to Tzumi, was intended to "clarif[y] that Tzumi seeks declaratory relief and damages for breach of contract not only concerning [Twin City's] duty to defend its insured in the underlying [*Proskin*] Action but also to indemnify or pay for the settlement of the [*Proskin*] Action." Pl. Ltr. at 1, ECF No. 39.

Twin City now moves to dismiss, while Tzumi moves for partial summary judgment on the duty to defend claim.[1] The sole question at issue is whether the *Proskin* Complaint can be reasonably construed to allege a claim of commercial disparagement, which is the only definition of "personal or advertising injury" that Tzumi invokes under the Policy in arguing for coverage.[2]

---

[1] Tzumi represented to the Court that its "motion for partial summary judgment . . . only concerns the duty to defend issue since Tzumi is presently attempting to settle the underlying [*Proskin*] action." *See* Pl. Ltr. at 1, ECF No. 39. The Court understands this to mean that Tzumi only plans to move for summary judgment on its indemnification claim if and when the class action settlement agreement in the *Proskin* Action receives final approval.

[2] In the First Amended Complaint, Tzumi does attempt to assert coverage under another definition of "personal and advertising injury" under the Policy: "Copying, in your 'advertisement' or on 'your website,' a person's or organization's 'advertising idea' or style of 'advertisement.'" *See* First. Am. Compl. ¶¶ 12, 58-69. Tzumi, however, does not address or defend this claim in its opposition to Twin City's motion to dismiss or in its own motion for partial summary judgment. The Court thus considers this claim to be abandoned. *See Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 61 n.9 (S.D.N.Y. 2019) (quoting *Lipton v. Cnty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("A court 'may, and generally will,

## LEGAL STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009) (internal quotation marks omitted). In determining whether there is a genuine issue of material fact, the Court must view all facts "in the light most favorable to the non-moving party." *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must accept as true all factual allegations and draw all reasonable inferences in Plaintiffs' favor, *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008), but it need not credit "mere conclusory statements," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted).

---

deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'"). Even if it were not abandoned, the Court would find the claim to be meritless, because the Policy defines "advertisement" to exclude "the packaging or labeling of any goods or products." First Am. Compl., Ex. 1 (Business Liability Coverage Form, § G(1)(a)).

5

**DISCUSSION**

"[A]n insurer will be called upon to provide a defense whenever the allegations of the [underlying] complaint suggest a reasonable possibility of coverage." *Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*, 955 F.3d 305, 310 (2d Cir. 2020) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006)). In other words, a defendant does not have a duty to defend "if it can be concluded as a matter of law that there is no possible factual or legal basis on which the defendant might eventually be held to be obligated to indemnify [the] plaintiff under any provision of the insurance policies." *Id.* at 310 (quoting *Mary & Alice Ford Nursing Home Co. v. Fireman's Ins. Co. of Newark*, 446 N.Y.S.2d 599, 600 (App. Div. 1982)). "[T]he duty to defend is broader than the duty to indemnify," *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65 (1991), and thus where "there is no duty to defend, there also is no corresponding duty to indemnify," *Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d 39, 42 (2d Cir. 1991).

Tzumi's theory of coverage—based on a somewhat contorted attempt to invoke the "disparagement" definition of a "personal and advertising injury" under the Policy—is that, "[b]y allegedly misleading customers into thinking Tzumi's products were EPA[-]certified for anti-microbial purposes and useful in cleaning surfaces when neither of those were true, Tzumi inevitably create[d] doubt as to the authenticity of the claims of similarly situated products, thereby disparaging its competitors." Pl. Mot. for Partial Summary Judgment at 10. In other words, according to Tzumi, it allegedly "disparaged" its competitors by "[c]reating a link between its products and competitors' [products]" through deceptive labeling "and subsequently undermining the credibility of all such products." *Id.* at 11.

The Court, however, finds "no possible factual or legal basis" in the *Proskin* Complaint for a disparagement claim. *Brooklyn Ctr. for Psychotherapy, Inc.*, 955 F.3d at 310. For one, the

*Proskin* Complaint does not actually allege any facts that would support Tzumi's misguided theory of disparagement. Rather, the allegations focus solely on Tzumi's *own* products, and how consumers were allegedly harmed by purchasing products that they otherwise "would not have purchased . . . if they had known that the products had not been approved for disinfecting surfaces and were illegal to sell." *Proskin* Compl. ¶ 51. The only allegations concerning competitor products are as follows: (1) "Tzumi selected packaging for Wipe Out! Wipes that resembled the packaging used by registered surface disinfectant wipes such as Lysol," *id.* ¶ 21; and (2) retailers "placed Wipe Out! Wipes with household surface cleaning and disinfection products, adjacent to and/or in close proximity to EPA-registered disinfectants in the cleaning supplies/products aisle, rather than with personal care or hand sanitizing products in the health and beauty aisle," *id.* ¶ 23. But those allegations cannot be reasonably construed as disparaging or derogating the competitor products—they merely illustrate how Tzumi allegedly sought to promote its own products in a misleading fashion.[3] In sum, Tzumi's characterization of the *Proskin* Complaint as alleging disparagement by Tzumi simply has no basis in the allegations of the *Proskin* Complaint itself.[4]

---

[3] Indeed, according to Tzumi's own disparagement theory, consumers could only have drawn negative inferences about other products *after* Tzumi publicly announced, pursuant to its settlement with the EPA, that its Products were not properly registered. Before that announcement, the unregistered nature of Tzumi's Products was not publicly known. The *Proskin* Complaint, however, does not contain a single allegation with respect to the time period following the EPA settlement. *Id.* ¶ 41.

[4] The *Proskin* Complaint does mention the word "disparaging" once, under Count VIII. *Proskin* Compl. ¶ 122(d). That count alleges violations of Massachusetts General Law Chapter 93A, Section 2, which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* ¶ 118. Count VIII further reads: "Defendant engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Mass. Gen. Laws Ch. 93A, § 2: . . . d) Disparaging the goods, services, or business of another by false or misleading representation of fact; . . . ." *Id.* ¶ 122(d). However, this fleeting, conclusory reference to commercial disparagement, with no factual allegations to support it, is not enough to create a factual or legal basis for an actionable disparagement claim. *See Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 834 N.Y.S.2d 736, 739-40 (App. Div. 2007); *see also General Star Indem. Co. v. Driven Sports, Inc.*, 80 F. Supp. 3d 442, 455 (E.D.N.Y. 2015) ("Although the complaints make vague references to 'disparagement' as a prohibited act under certain state statutes . . . one need only read the underlying allegations to see that they nonetheless all arise from [the insured's] failure to conform with its advertised quality.").

*See Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 834 N.Y.S.2d 736, 739-40 (App. Div. 2007)) ("[A] party's characterization of the causes of action alleged in a complaint are not controlling as [the court seeks] to determine the nature of the claims based upon the facts alleged and not the conclusions which the pleader draws therefrom." (internal quotation marks omitted)).

Even if the *Proskin* Complaint did allege that Tzumi "disparaged" its competitors by suggesting, through copycat labeling and physical proximity on store shelves, that the competitor products were not properly registered with the EPA, such a theory would fail under New York law. The law in New York is clear: "[A] claim of disparagement must contain 'specific assertions of unfavorable facts reflecting upon the rival product'" in order to be actionable. *Elite Brands, Inc. v. Pa. Gen. Ins. Co.*, 164 F. App'x 60, 62 (2d Cir. 2006) (emphasis added) (quoting *Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F. Supp. 1201, 1209 (S.D.N.Y. 1986)); *see also Dollar Phone Corp. v. St. Paul Fire & Marine Ins. Co.*, 2012 WL 1077448, at *6 (E.D.N.Y. Mar. 9, 2012) (discussing *Elite Brands*) ("[T]he Second Circuit [has] held that while an advertisement that reflects poorly on a competitor may have caused some harm, the absence of a specific unfavorable reference to the competitor's product precluded policy coverage for a claim of disparagement."), *report & recommendation adopted*, 2012 WL 1078994 (E.D.N.Y. Mar. 30, 2012), *aff'd*, 514 F. App'x 21 (2d Cir. 2013). In other words, there must be "some identifying statement that compares the advertised product to those sold by competitors," even if the competitor's product is not expressly identified by name. *Dollar Phone Corp.*, 2012 WL 1077448, at *8 (collecting cases).

In *Elite Brands*, for example, the plaintiff in the underlying action, Fuji Photo Film Co., Ltd. ("Fuji"), brought claims of patent infringement against the insured, Elite Brands, Inc. ("Elite"), and proffered testimony to the effect that "[Elite's] low-priced allegedly infringing goods would lead Fuji's customers to believe that Fuji's prices were unreasonably high." *Elite Brands,*

*Inc. v. Pa. Gens. Ins.*, 2004 WL 1945732, at *5 (S.D.N.Y. Sept. 2, 2004). Based on this speculative comparison, Elite argued that "a potential foundation for a claim of disparagement" existed, and thus claimed coverage for "personal and advertising injury" under a similar commercial liability policy. *Id.* at *6. The district court disagreed, reasoning that "a claim of disparagement is not supported by 'mere general statements of comparison, declaring that the defendant's goods are best on the market, or are better than plaintiff's . . . so long as they contain no specific assertions of unfavorable facts reflecting upon the rival product.'" *Id.* (quoting *Brignoli*, 645 F. Supp. at 1209), *aff'd sub nom.*, *Elite Brands, Inc. v. Pa. Gen. Ins. Co.*, 164 F. App'x 60 (2d Cir. 2006); *see also Dollar Phone Corp.*, 2012 WL 1077448, at *8 ("[T]he plain meaning of the word 'disparage' would require some reference or comparison to the competitor's products."). Thus, the district court concluded,

> even if Fuji's proffers could be construed to suggest that the pricing or packaging of [Elite's] products implicitly represented that [Elite's] products were of equal or superior quality to Fuji's at a better price, the proffers would be insufficient to support a reasonable possibility that such claim would be covered under the personal injury provision of the Policy.

2004 WL 1945732, at *6. So too here, where Tzumi is not even alleged to have made "general statements of comparison" about its competitors, let alone "specific assertions of unfavorable facts reflecting upon [a] rival product." *Id.* at *5.

The cases cited by Tzumi—many of which are from out-of-circuit jurisdictions—do not compel a different conclusion. For example, in *Hartford Fire Insurance Co. v. Vita Craft Corp.*, 911 F. Supp. 2d 1164 (D. Kan. 2012), the underlying complaint alleged that the insured "engaged in and orchestrated a scheme to damage and injure TSI by spreading false rumors regarding one of TSI's licensees," including a message that read, "Don't trust CookTek!!!! They are fraud," which clearly involved assertions of unfavorable facts about a rival business. *Id.* at 1179.

9

Similarly, in *Del Monte Fresh Produce N.A., Inc. v. Transportation Insurance Co.*, 2006 WL 2331144 (N.D. Ill. Aug. 8, 2006), the insured allegedly "launched a campaign to declare its pineapples were sweeter than those of its competitors, and that competitors would infringe the [insured's] patent if they marketed extra-sweet pineapples." *Id.* at *5.[5]

Perhaps the closest case Tzumi relies on is *Natural Organics, Inc. v. OneBeacon America Insurance Co.*, 959 N.Y.S.2d 204 (App. Div. 2013). There, an underlying action was commenced against the insured, a manufacturer of health supplement products called Natural Organics, Inc. ("Natural Organics"), after Natural Organics terminated its exclusive distributorship agreement with the underlying plaintiff and then issued a statement announcing the appointment of the underlying plaintiff's competitor as the exclusive distributor for the insured's products in several European countries. The court concluded that these allegations "fall within the policy's coverage for 'personal and advertising injury' arising from product disparagement," because "[t]he statement that [the underlying plaintiff's competitor] had been appointed the exclusive distributor of [Natural Organics' products] in the Nordic region could imply that [the underlying plaintiff's] inventory of [Natural Organics' products] was unauthorized." *Id.* at 207. While the *Natural Organics* court allowed a disparagement theory by implication, the inference there was clear—an announcement of an exclusive distributorship necessarily means that other distributors are unauthorized. Here, by contrast, Tzumi's theory of disparagement—that customers would learn of Tzumi's unregistered products, and then mistakenly infer that other products located on nearby shelves were also unregistered—is too far of a stretch. *See Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82 (2d Cir. 2006) ("[T]he duty to defend will not be imposed through a strained,

---

[5] Indeed, the Illinois district court noted that "[t]o find disparagement, 'there must be statements about a competitor's goods which are . . . made to influence or tend to influence the public not to buy.'" 2006 WL 2331144, at *5 (quoting *Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 327 Ill. App. 3d 128, 140 (2001)).

10

implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable."); *Stamford Wallpaper Co., Inc. v. TIG Ins.*, 138 F.3d 75, 81 (2d Cir. 1998) ("We will not hypothesize or imagine episodes or events that cannot be found among the [underlying] allegations, and cannot reasonably be deduced from them.").

For the same reasons, Tzumi's disparagement theory would also fail under California and Massachusetts law, the other two jurisdictions where the *Proskin* Complaint brings causes of action. *See, e.g.*, *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 284 (2014) ("[A] claim of disparagement requires a plaintiff to show a false or misleading statement that (1) specifically refers to the plaintiff's product or business and (2) clearly derogates that product or business."[6]); *Total Call Int'l Inc. v. Peerless Ins. Co.*, 181 Cal. App. 4th 161, 170 (2010) (quoting *Blatty v. N.Y. Times Co.*, 42 Cal.3d 1033, 1042 (1986)) (holding that coverage under the disparagement offense provision was limited to statements that "specifically refer to," or are "of and concerning," a competitor's products); *HipSaver, Inc. v. Kiel*, 464 Mass. 517, 523 (2013) ("[I]n order to prevail on a claim alleging commercial disparagement, a plaintiff must prove that a defendant: (1) published a false statement to a person other than the plaintiff; (2) 'of and concerning' the plaintiff's products or services . . . ."); *Welch Foods, Inc. v. Nat'l Union Fire Ins. Co.*, 2010 WL 3928704, at *3 (D. Mass. Oct. 1, 2010) ("While the advertisements at issue here

---

[6] Like in New York, California law also allows a plaintiff to meet these elements either "by express mention or by clear implication." *Swift Distribution, Inc.*, 59 Cal. 4th at 284. But the emphasis is on the word "clear"—a statement must still be reasonably understood to refer to, and derogate, a competitor's products in order to constitute implicit disparagement. *See id.* at 295 ("Disparagement by 'reasonable implication' requires more than a statement that may conceivably or plausibly be construed as derogatory to a specific product or business. A 'reasonable implication' in this context means a clear or necessary inference." (internal citations omitted)); *id.* at 298-99 (concluding that the label "patent-pending" was "not specific enough to call into question [the competitor's] proprietary rights in his product or to suggest that the [defendant's product] ha[d] any unique feature that is an important differentiator between competing products"). In the *Proskin* Complaint, there is no allegation containing a "clear or necessary inference" that Tzumi derogated a specific product or business through its deceptive labeling.

11

constitute 'written publications,' they did not disparage POM or its products by making false claims about them; rather, Welch is alleged to have misrepresented the content of its *own* product." (emphasis in original)), *aff'd sub nom.*, *Welch Foods, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 659 F.3d 191 (1st Cir. 2011).  There is thus "no possible factual or legal basis" for Tzumi's theory of disparagement to give rise to a duty to defend or indemnify from Twin City, nor does Tzumi assert any other bases for coverage under the Policy.  *See Dollar Phone Corp.*, 2021 WL 1077448, at *7 ("While [an insurance] contract must be construed in favor of the insured, that does not require the court to stretch the words of the contract or create fictitious causes of action.").

Finally, even if the *Proskin* Complaint did allege a "personal and advertising injury" as defined by the Policy, coverage would still be excluded under the Policy's Knowledge of Falsity Exclusion and Non-Conformance Exclusion.  An insurer has no duty to defend if "the allegations of an underlying complaint place that pleading solely and entirely within the exclusions of the policy and . . . the allegations are subject to no other interpretation."  *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 77 (2d Cir. 2013) (internal quotation marks omitted).  That is precisely the case here.  The *Proskin* Complaint alleges that Tzumi intentionally made false and misleading claims on the labeling of *its* Products, *see Proskin* Compl. ¶ 2, which invokes the Knowledge of Falsity Exclusion, as each of the underlying claims relate to the "publication of material . . . done by or at the direction of the insured with knowledge of its falsity," First Am. Compl., Ex. 1 (Business Liability Coverage Form § B(1)(p)(1)).  The *Proskin* Complaint also alleges that Tzumi "drafted and sent for posting on the website of Home Depot, its largest retailer, a 'production description' of the Wipe Out! Wipes . . . expressly claim[ing] that the product was a disinfectant for surfaces."  *Proskin* Compl. ¶ 22.  This allegation invokes the Non-Conformance Exclusion as well, because the alleged injury "ar[ose] out of the failure of goods [or] products . . .

to conform with [a] statement of quality or performance made in [the insured's] 'advertisement.'"

First Am. Compl. Ex. 1 (Business Liability Coverage Form, § B(1)(p)(5)).[7]

## CONCLUSION

For the foregoing reasons, Twin City's motion to dismiss is granted, and Tzumi's motion for partial summary judgement is denied. The Clerk of Court is respectfully directed to terminate the motions pending at ECF No. 18, 22, and 41 and close this case.

Dated:   August 11, 2023
         New York, New York

Ronnie Abrams
United States District Judge

---

[7] The Policy explicitly excludes from the definition of "advertisement" the "design, printed material, information or images contained [on] . . . the packaging or labeling of any goods or products," First Am. Compl., Ex. 1 (Business Liability Coverage Form, § G(1)(a)), so the allegations in the *Proskin* Complaint with respect to false and misleading labeling could not invoke the Non-Conformance Exclusion. In any event, as discussed, Tzumi's theory of disparagement falls outside the scope of the Policy, and even if it were covered, the Knowledge of Falsity Exclusion would apply to all of the *Proskin* Complaint's claims.